## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHILIP CLARK CHAPPELLE, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | )   CASE NO. 15-CV-339-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, PHILIP CLARK CHAPPELLE, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards.  *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff, Philip Clark Chappelle's application for disability insurance benefits was denied initially and upon reconsideration.  A hearing before Administrative Law Judge (ALJ) James Stewart, was held September 6, 2013.  By decision dated October 25, 2013, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied Plaintiff's request for review on April 16, 2015.  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 49 years old on the alleged date of onset of disability and 54 years old on the date of the denial decision. He has a college education and formerly worked as a vice president of a construction company. [68, 204]. Plaintiff claims to have been unable to work since December 12, 2008, [R. 164], due to traumatic brain injury, memory loss, post traumatic stress disorder (PTSD), executive dysfunction, tinnitus, difficulty multitasking, clinical depression, and bipolar disorder. [R. 233].

## The ALJ's Decision

The ALJ determined that the Plaintiff's severe impairments include traumatic brain injury-post concussive syndrome with symptoms of memory loss and executive dysfunction, PTSD, depression, attention deficit disorder, tinnitus like symptoms, and sleep disorder. The ALJ also found that Plaintiff's arthritis, joint pain, and tinnitus are non-severe impairments. [R. 20]. The ALJ further determined that Plaintiff has the residual functional

2

capacity (RFC) to perform a full range of work at all exertional levels but was limited to jobs that do not require contact with the general public, only require that he understand, remember, and carry out simple instructions, and perform only unskilled work consisting of simple and routine tasks.  Plaintiff is limited to jobs that require only occasional work related contact with coworkers and supervisors such that the Plaintiff works at his station independently, accomplishing his own tasks, and not in coordination or cooperation with coworkers. [R. 22].  The ALJ determined at step five that there are a significant number of jobs in the national economy that Plaintiff could perform.  [R. 32].  Accordingly, the ALJ found Plaintiff was not disabled.  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled.  *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that: 1) the ALJ's RFC assessment is in conflict with the medical evidence of record; 2) the ALJ's own findings do not support the RFC; 3) competitive employment would be eliminated by Plaintiff's absences from work; and 4) the ALJ did not properly assess Plaintiff's sleep disorder and treatment.

## Analysis

### ALJ's RFC Assessment in Conflict with the Medical Evidence of Record

Plaintiff argues that his ability to work independently as found by the ALJ in the RFC assessment is not supported by the medical evidence.  Plaintiff contends that when formulating the RFC the ALJ should have accepted the observations of treating physicians, as well as Plaintiff's testimony, which substantiate his problems with attention and persistence.

3

In support of his argument, Plaintiff points to several medical records including the examination by Scott Mays, M.D., on January 24, 2012 which indicates he talked out of turn, was easily distracted, impulsive, and failed to follow commands. [R. 395-96]. Dale Jeffus, Ph.D., performed a neuropsychological evaluation on September 11, 2006 and determined Plaintiff was moderately, and close to severely, impaired in the measures of attention. [R. 490-96]. David E. Hansen, Ph.D., noted on December 18, 2012 that Plaintiff required occasional repetition of task instructions, was frequently distractible, and somewhat disinhibited/impulsive during the evaluation. Dr. Hansen opined Plaintiff would best perform in settings that are highly structured and routine in order to avoid demands upon attention, concentration, or self-monitoring. [R. 436, 439]. Jorge Gonzalez, M.D., completed a mental Medical Source Statement in September 2013 opining that Plaintiff has extreme impairments in his ability to make judgments on complex work-related decisions, difficulty with attention/concentration, problems processing at the executive level, and problems with task initiation/completion. Dr. Gonzalez also noted that Plaintiff does well on his own but needs structure. [666-67].

The ALJ thoroughly discussed the medical evidence noting in May 2006 Plaintiff was examined by neurosurgeon David A. Fell, M.D., who found he had experienced significant improvement in recent memory and ability to handle multiple thought processes at the same time. Plaintiff felt that he was back to his normal higher mental functioning. [R. 24, 510]. In September 2009 Dr. Jeffus performed a neuropsychological evaluation and found Plaintiff had improved significantly and had a full-scale IQ of 109. [R. 24-25]. In June 2006 neurologist Kevin J. Klos, M.D., indicated Plaintiff was returning back to work and is working at almost full speed. His memory was improving and he had no problems with

4

long-term memory.  [R. 510].  In January 2007 Dr. Klos found Plaintiff had made significant progress to achieve baseline pre-injury state and could resume normal duties. [R. 25, 505].  On April 6, 2010 Plaintiff reported to neurologist Jay K. Johnson, D.O., that Adderall and Ritalin helped his focus.  [R. 25, 326].   A Mental Status Evaluation was performed on November 15, 2012 by state agency psychologist Susan Linde, Ph.D., who opined Plaintiff had a mild impairment in attention/concentration though his overall function was within normal limits.  Further, Plaintiff was likely able to do work related mental activities as he had the ability to understand and remember though his ability to sustain concentration, persist, socially interact, and adapt may be compromised.  [R. 25-26, 408-415].  In November 2012 Dr. Hansen's neuropsychological evaluation revealed Plaintiff was independent in his activities of daily living including driving and managing finances.  Dr. Hansen found there was no compelling indication of a broad neurocognitive impairment or significant dysfunction.  His diagnostic impression was mild cognitive impairment of a rather scattered nature with broad neurocognitive abilities within the average to high average limits.  [R. 26, 435-39].  In January 2013 Dr. Gonzalez found Plaintiff had mild traumatic brain injury. [R. 26, 301].

The RFC limitations are consistent with the findings of Plaintiff's treating physicians. The ALJ found these opinions well supported by the medical evidence including a mild to moderate compromise in Plaintiff's ability to function which is addressed by limiting him to unskilled work consisting of simple and routine tasks.  The ALJ properly discussed the medical record and considered testimony from Plaintiff regarding his impairments and activities of daily living which include the ability to care for his personal needs, manage finances, drive a car, cook, clean, mow the yard, work on cars, fish, and shop

independently.  [R. 21].  The court finds the ALJ's RFC finding that Plaintiff has the ability to work independently supported by substantial evidence.

In the decision the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]"  [R. 24]. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted).  The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including: reports in May 2006 that Plaintiff experienced a significant improvement in recent memory and the ability to handle multiple thought processes at the same time; in June 2006 Plaintiff was working at almost full speed and had no problems with long-term memory; and ringing sensation completely subjective as all EEG and audiometry findings were normal.  The ALJ found Plaintiff's traumatic brain injury and tinnitus did not prevent him from working in 2007-2008 which is an indication that he currently would not be prevented from work. [R. 24-25]. Thus the ALJ properly linked his credibility finding to the record.  The court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## ALJ's Findings Do Not Support the RFC Given

Plaintiff argues that the ALJ erred by failing to incorporate his step three findings that Plaintiff has moderate difficulties in the areas of activities of daily living and concentration,

persistence, and pace[2] into the RFC assessment.  Plaintiff contends that failing to include the "moderate" limitations in the paragraph B criteria, [R. 21-22], into the RFC assessment is reversible error.  [Dkt. 13, p. 4].  However, the law is clearly settled that findings as to concentration, persistence, or pace at steps two and three do not automatically apply at step four when the ALJ is formulating a claimant's RFC.  See *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. Oct. 31, 2013) (unpublished) ("[M]ental limitations noted in the threshold inquiry at steps two and three do not apply at later steps."); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. Apr. 10, 2013) (unpublished) ("[T]he ALJ's finding of 'moderate difficulties' in social functioning in the 'paragraph B' criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). Rather, "[t]he social security ruling on assessing a claimant's RFC cautions that '[t]he adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Vigil*, 805 F.3d at 1203, quoting *SSR* 96-8, 1996 WL 374184 at *4 (July 2, 1996).  The ALJ specifically stated the RFC assessment reflects the degree of limitation he found in the paragraph B mental function analysis. [R. 22].  Thus, there is no merit to Plaintiff's assertion that the

---

[2] Plaintiff argues that the RFC assessment addresses the area of social functioning by limiting contact with the general public, coworkers, and supervisors, but fails to address the other impairments identified by the ALJ in the paragraph "B" criteria.

RFC conflicts with the ALJ's finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace.  The ALJ's RFC finding included work-related mental limitations supported by substantial evidence.

<u>Competitive Employment Would be Eliminated by Plaintiff's Absences from Work</u>

Plaintiff argues that competitive work would be eliminated based upon the vocational expert's response to the hypothetical question which included absences up to four days each month from work.  [R. 72-73, Dkt. 13, p. 4-5].  Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted); see also *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record").

The ALJ posed four hypothetical questions to the vocational expert.  The first hypothetical question concerned a person with no exertional limitations.  Mental limitations included jobs that do not require contact with the public, and only require a person to understand, remember, and carry out simple instructions and perform unskilled work consisting of simple and routine tasks.  The second and third hypothetical question posed to the vocational expert included the same physical restrictions of the first hypothetical question and added restrictions concerning work-related interaction.  The fourth hypothetical question included interference with sleep rhythms due to post-concussive syndrome and the inability to have the concentration, persistence, and pace to complete a normal eight hour work day on a sustained basis and on average would miss work more

8

than four days per month.  In response, the vocational expert testified that there would be no competitive work available.  [R. 70-72].  The record did not reveal Plaintiff missed or rescheduled appointments because of the sleep disorder, nor did Plaintiff testify that he would be unable to function on a schedule. [R. 27].  Because the ALJ did not conclude Plaintiff would have excessive absences, he was not required to accept the vocational expert's response to a hypothetical including this limitation.  See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.1990))(the ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ); see also *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993) (hypothetical does not need to include impairments which are unestablished and conclusive).

### ALJ Has Not Properly Assessed Plaintiff's Sleep Disorder and its Treatment

Plaintiff argues that the ALJ failed to properly evaluate his sleep disorder and discredited his testimony.  [Dkt. 13, p. 5].  Plaintiff contends that because the ALJ found Plaintiff's sleep disorder a severe impairment at step two, specific limitations should have been included in the ALJ's RFC finding.  The court does not agree.  The step two severity finding and the RFC finding involve different considerations.  To find a "severe" impairment at step two requires only a threshold showing that the claimant's impairment has "more than a minimal effect on [her] ability to do basic work activities."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988).  A step two determination that Plaintiff's traumatic brain injury-post concussive syndrome including symptoms of memory loss, executive dysfunction, post traumatic stress disorder, depression, attention deficit disorder, tinnitus like symptoms, and sleep disorder  are "severe" only allows the sequential process to

9

proceed.  It does not address the degree of work-related functional limitations resulting from the "severe" impairments.  An ALJ does not err by failing to match each step two impairment to a work-related limitation in the RFC.  Rather, in developing the RFC the ALJ considers all of the medical and other evidence to determine whether the record supports the existence of physical, mental, sensory, and other limitations in the ability to perform work-related functions.  *See* 20 C.F.R. §§ 404.1545, 416.945.  The question then is not whether the RFC contains the "severe" impairments, but whether the RFC accounts for the work-related limitations that flow from those impairments.  Thus, the ALJ's failure to incorporate each severe impairment found at step two into the RFC finding is not error.

In finding the Plaintiff's statements about his sleep disorder not fully credible, the ALJ relied in part upon Plaintiff's noncompliance with prescribed medication and treatment. The ALJ noted that there were no documented sleep studies in the record; his testimony was ambiguous; Plaintiff did not state outright that he could not get up and function on a schedule; and there was no history of missed or rescheduled appointments. [R. 27]. The record shows that  Plaintiff reported that he had difficulty sleeping when taking Adderall. Dr. Hansen opined that Plaintiff's insomnia could have been associated with psychostimulant medications.  [R. 27, 436].  When Plaintiff's dosage of Adderall was reduced, he admitted he continued to take the higher dosage and would run out for several days before he was able to refill the prescription. [R. 435].  In October 2009 Plaintiff was diagnosed with stimulant abuse.  [R. 323].  Plaintiff testified that he stays awake up to six days and then sleeps up to thirty six hours. [R. 60].  In July 2013 Plaintiff was prescribed sleep medication which he reported provided benefit.  However, Plaintiff failed to take the medication consistently and did not refill his prescription.  [R. 653].  The ALJ determined

10

that Plaintiff's noncompliance with treatment could have exacerbated his symptoms and would see improvement with adherence.  [R. 27].  Substantial evidence supports the ALJ's credibility findings pertaining to Plaintiff's testimony regarding his sleep disorder.  Thus, the court finds no error.

Plaintiff argues that to properly evaluate Plaintiff's claim the ALJ had a duty to develop the record by ordering a sleep study.  [Dkt. 13, p. 6].  The burden to prove disability in a social security case is on the Plaintiff and Plaintiff must furnish medical and other evidence of the existence of the disability.  *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) citing *Bowen v. Yuckert,* 482 U.S. 137, 146 (1987).  The ALJ has a basic obligation ... to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993).  Concomitant with this obligation is the ALJ's duty to consider all materials submitted to him in a particular case.  See 42 U.S.C. § 423(d)(5)(B)(the Commissioner's decision must be made upon consideration of all the evidence available in the record).  The ALJ indicated that there were no documented sleep studies in the record.  [R. 27].  This statement by the ALJ was part of his discussion of the evidence and his reasons for his conclusions which demonstrates that he adequately considered Plaintiff's alleged impairment.  Therefore, the court finds that the ALJ did not have a duty to order a sleep study.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The court further finds there

is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 26th day of August 2016.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE